BARCLAYSAMERICAN/CREDIT COMPANY v. PATRICIA ANN RIDDLE

No. 8124DC1104

(Filed 15 June 1982)

**Chattel Mortgages and Conditional Sales § 1— N.C. Consumer Finance Act—small loan secured by automobile**

Under the pertinent statutes, and particularly N.C.G.S. 53-180(f), a general lender operating under N.C.G.S. 53-173 is entitled to secure any loan by taking a security interest in a motor vehicle. N.C.G.S. 53-173 does not limit the type of security that may be taken by a lender. N.C.G.S. 53-176.1, 53-191 (1965) and N.C.G.S. 53-168(c).

APPEAL by plaintiff from *Lacey, Judge.* Judgment filed 2 July 1981 in District Court, YANCEY County. Heard in the Court of Appeals 27 May 1982.

Plaintiff is licensed under N.C.G.S. 53-168 and engaged in the business of making small loans pursuant to N.C.G.S. 53-173. On 6 July 1979 plaintiff loaned the defendant the sum of $1,677.42, in return for which defendant signed a promissory note and granted plaintiff a security interest in her car. Plaintiff instituted an action on the account on 28 January 1981, alleging that the defendant was $740.29 in arrears on the loan. Judgment was entered in favor of the plaintiff. Defendant appealed the magistrate's decision to district court. By answer and counterclaim she denied liability and alleged that the loan was void as in violation of the North Carolina Consumer Finance Act. Plaintiff moved for summary judgment.

Pursuant to Rule 56(c) of the North Carolina Rules of Civil Procedure, the trial court granted summary judgment in favor of

the defendant, concluding that the plaintiff, "while purporting to operate under N.C. Gen. Stat. § 53-173, by taking a security interest in a motor vehicle, was a motor vehicle lender in this instance, and was prohibited from charging an interest rate greater than 16% per annum." The trial court further concluded that by charging the defendant an interest rate of 23.27 percent per annum, plaintiff violated N.C.G.S. 53-176.1 of the North Carolina Consumer Finance Act pertaining to motor vehicle lenders. Pursuant to N.C.G.S. 53-166(d), the court held that the loan contract was void and ordered plaintiff to pay the defendant the sum of $1,514.53, plus eight percent interest from the date of judgment.

*Carnes and Little, by Stephen R. Little, and Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Henry A. Mitchell, Jr. and Julian D. Bobbitt, Jr., for plaintiff appellant.*

*Legal Aid Society of Northwest North Carolina, Inc., by Ellen W. Gerber, for defendant appellee.*

MARTIN (Harry C.), Judge.

The question before us is whether the summary judgment is supported by a correct interpretation of the applicable provisions of the North Carolina Consumer Finance Act. The case is one of first impression in our courts, necessitating the construction of N.C.G.S. 53-173 and -176.1 as each provision relates to the other and to the overall policies of the Consumer Finance Act.

Plaintiff is licensed as a general lender under N.C.G.S. 53-168 and operating pursuant to N.C.G.S. 53-173. Small loan operations under N.C.G.S. 53-173 enjoy substantially higher interest rates than allowed to other lenders. The ceiling amount of a loan permitted under this section is $3,000. The only section of the Consumer Finance Act which expressly limits the type of collateral available to a general lender operating under N.C.G.S. 53-173 is N.C.G.S. 53-180(f) which states that "[n]o loan made pursuant to the provisions of G.S. 53-173 shall be secured in any way by an interest in real property." Nothing else appearing, it would seem that a general lender may secure loans by taking a security interest in any type of personal property—including a motor vehicle.

It is defendant's contention that N.C.G.S. 53-176.1 must be construed as an implied limitation imposed on N.C.G.S. 53-173.

"[A]ny person, firm or corporation licensed under [article 15, the North Carolina Consumer Finance Act] to make loans to borrowers . . . secured by a security interest in a motor vehicle, and whose license shall indicate on the face thereof that such licensee is a motor vehicle lender" falls into the category of a motor vehicle lender as provided in N.C.G.S. 53-176.1. This section goes on to provide that:

> No office holding a license under the provisions of this section and making loans secured by motor vehicles may make loans under the provisions of G.S. 53-166, G.S. 53-173, G.S. 53-180, or G.S. 53-141, nor shall such office allow or permit loans under the other provisions of this Article to be made on its premises or any connecting premises. All other provisions of this Article not inconsistent with this section shall apply to a "motor vehicle lender."

Loans under this section may be made up to an amount not exceeding $5,000 at an interest rate not in excess of 16 percent.

We first turn to the legislative history of these provisions of the Consumer Finance Act in order to resolve the parties' conflicting interpretations. Prior to 1969, section 173 lenders were subject to N.C.G.S. 53-191 as follows: "Businesses exempted.— Nothing in this article shall be construed to apply to any person, firm or corporation engaged solely in the business of making loans of fifty dollars ($50.00) or more secured by motor vehicles . . .." N.C. Gen. Stat. § 53-191 (1965). Although plaintiff contends that this exemption did not apply to the general lender operating under section 173, a review of the Annual Reports of the Commission of Banks indicates otherwise. Under an "Analysis of Loans by Type of Security" for the years 1961 (when the C.F.A. was enacted) through 1969, the type of security for section 173 loans did not include motor vehicles. The schedules represent a compilation of reports submitted by the licensees.

In 1969 the Act was amended. The above-quoted portion of N.C.G.S. 53-191 was deleted and -176.1 was added, thus bringing the motor vehicle lender within the scope of the Act. By amendment in 1973, N.C.G.S. 53-168(c) was added to the Act, allowing a one-time election for those holding either a section 173 or a section 176.1 license to switch categories without meeting the section 168 licensing requirements. It is plaintiff's contention that the ad-

dition of section 176.1 and the subsequent opportunity for motor vehicle lenders to elect to become general lenders bespeaks of a clear legislative intent to merely add a new category of lenders to the Act, while at the same time recognizing that an election to become a section 173 general lender would not impair, but in fact would broaden, their loan options.

Our second consideration in resolving this dispute involves an analysis of the purpose and policy behind these provisions. Motor vehicles, whether new or used, provide lower risk security for loans which would justify the lower interest rate and necessitate the higher loan ceiling over a longer term evidenced in N.C.G.S. 53-176.1. Every motor vehicle owner is required by N.C.G.S. 20-50(a) to secure registration plates and a certificate of title to operate the vehicle on public highways. Furthermore, N.C.G.S. 20-58 allows a motor vehicle lender to perfect its security interest by indicating the lien on the certificate of title. A creditor taking a security interest in a motor vehicle is also protected by the availability of insurance. Motor vehicles are more likely to be subject to the right of a secured lender on default to take possession of collateral without judicial process. N.C. Gen. Stat. § 25-9-503 (Supp. 1981). Based on these facts, it is defendant's position that the general lender is precluded from having the advantage of a higher interest rate and the low risk security of a motor vehicle; that the statutory provisions contemplate an election; and that plaintiff's election to become a N.C.G.S. 53-173 general lender is determinative of its rights to secure loans on personal property other than motor vehicles.

Based upon the express language of the relevant statutes, we must reject defendant's contentions. We hold that under the pertinent statutes, and particularly N.C.G.S. 53-180(f), a general lender operating under N.C.G.S. 53-173 is entitled to secure any loan by taking a security interest in a motor vehicle. N.C.G.S. 53-173 does not limit the type of security that may be taken by a lender. The limitation imposed by N.C.G.S. 53-180(f) only proscribes the use of interests in real property as security. This subsection refers specifically to section 173, and it may be reasonably inferred that had the legislature intended to prohibit the use of motor vehicles as security for loans made under section 173, it would have so stated.

Plaintiff was entitled to summary judgment in its favor, and the trial court erred in granting summary judgment for defendant.

Reversed.

Judges VAUGHN and HILL concur.